PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

v.

CHARLES LEE SMOOT,

       *Defendant-Appellant.*

No. 11-4442

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:09-cr-00070-AW-1)

Argued: March 21, 2012

Decided: August 13, 2012

Before TRAXLER, Chief Judge, and KING and WYNN,
Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Chief Judge Traxler and Judge Wynn joined.

## COUNSEL

**ARGUED:** Christopher Bowmar Mead, LONDON & MEAD, Washington, D.C., for Appellant. Anthony William Vitarelli, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Rod J. Rosen-

stein, United States Attorney, Baltimore, Maryland, Stacy Belf, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland; Lanny A. Breuer, Assistant Attorney General, Greg D. Andres, Acting Deputy Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

KING, Circuit Judge:

Following a jury trial in the District of Maryland, Charles Lee Smoot was convicted and sentenced to prison for being a felon in possession of a firearm. Smoot contends on appeal that his possession of the firearm was legally justified, or, in the alternative, that he is entitled to a new trial on the ground that the jury was misinstructed on an essential element of the offense. We reject Smoot's challenges to his conviction, and another to his sentence, and we affirm.

I.

On October 3, 2008, the police department of Hyattsville, Maryland, received a call from a citizen advising that there was an outstanding warrant for the arrest of Charles Smoot, and that he was located in a house at 4404 Oliver Street.[1] That address was known to the authorities as a place where narcotics activity frequently occurred. After confirming the existence of the warrant with the Prince George's County Sheriff,

---

[1] The facts set forth herein are derived from the record on appeal, including an ATF agent's November 26, 2008 affidavit supporting Smoot's federal arrest warrant, and the evidence presented at Smoot's trial. We recite the latter in the light most favorable to the government, as the prevailing party at trial. *See United States v. Singh*, 518 F.3d 236, 241 n.2 (4th Cir. 2008).

the Hyattsville police dispatched several officers to execute it. Upon arriving at the Oliver Street residence, the officers divided into three teams and began a search for Smoot. Two officers approaching the property from a rear alley encountered a man matching Smoot's description in the backyard of the residence. They ordered the man to the ground, and one of the officers recognized him from previous encounters as Smoot. During the ensuing patdown, an officer seized a loaded .38 caliber Smith and Wesson revolver from the left side of Smoot's waistband.

Smoot was charged on November 26, 2008, and then indicted on February 11, 2009, for having possessed a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1).[2] Prior to trial, on October 4, 2010, Smoot filed objections to the government's proposed jury instructions, wherein he indicated that the Supreme Court's decision in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), had constitutionally authorized him to possess a firearm in his home. Smoot posited that *Heller* had effectively created an additional element of a § 922(g)(1) offense requiring the government, as part of its

---

[2]The indictment alleged the § 922(g)(1) offense in the following terms:

On or about October 3, 2008, in the District of Maryland, the defendant,

CHARLES LEE SMOOT,

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess a firearm, to wit: a Smith and Wesson .38 caliber revolver bearing serial number D817726, in or affecting commerce.

J.A. 10. To establish a § 922(g)(1) offense, the government is obliged to prove: (1) the defendant was a convicted felon; (2) who knowingly possessed a firearm; and (3) the firearm had travelled in interstate commerce. *See United States v. Gallimore*, 247 F.3d 134, 136 (4th Cir. 2001). The indictment also sought the forfeiture of the Smith and Wesson revolver that had been seized from Smoot. The forfeiture allegation, however, is not relevant to this appeal. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties to this appeal.)

case-in-chief, to affirmatively rebut a presumption that his possession of the revolver was for legitimate self-defense purposes.

Having been alerted that Smoot likely intended to mount a constitutional challenge to § 922(g)(1), the government took the preemptive step of moving in limine to bar Smoot's argument from being presented to the jury and to exclude any evidence that might be offered in support. Smoot objected to the motion and also contested the government's proposed instruction on the third element of § 922(g)(1), i.e., that the revolver had travelled in interstate commerce. Smoot argued that the instruction was an incomplete statement of law — and thus incorrect — on the theory that a firearm could surrender its nexus to interstate commerce if enough time had passed since its manufacture in one state and shipment to another. Smoot contended that the government's instruction, as proposed, directed a jury finding against him on the interstate commerce nexus element.[3]

Smoot's trial began in Greenbelt on October 12, 2010. That morning, prior to jury selection, the district court heard argument on the government's motion in limine. In granting the

---

[3]Smoot's proposed instruction on the third element of § 922(g)(1), rejected by the district court, would have required the government to prove his possession of the firearm had an ongoing effect on interstate commerce. The rejected instruction agreed in substance with that offered by the government insofar as it acknowledged that previous interstate travel could satisfy the element, but Smoot proposed to further instruct the jury that:

> You may also consider whether the firearm had lost its interstate character or stopped its interstate movement at the time of the alleged offense. However, if you find that the government has not proved that the defendant's continuing possession of the firearm had an ongoing effect on interstate commerce, even if slight, then you must acquit the defendant.

*United States v. Smoot*, 8:09-cr-00070, Docket No. 17 (D. Md. Oct. 4, 2010).

motion, the court relieved the government from having to prove that Smoot had not possessed the revolver in his home for self-defense, observing along the way that nothing in the record supported Smoot's contention that he was, at any relevant time, actually in his home. Indeed, after hearing from the parties, the court related that, "even the proffer that [defense counsel has] made is just a generic, general proffer about someone at another one's home, in a yard walking around with a gun." J.A. 73. The ruling also barred Smoot from arguing to the jury, by reference to the government's evidence, that the revolver had lost its nexus to interstate commerce by having been manufactured and sold across state lines a full thirty-five years previously.

The government presented its case to the jury later that same day, introducing into evidence Smoot's .38 revolver and its ammunition, and calling two of the arresting officers as witnesses. The officers testified that Smoot was carrying the loaded revolver in his waistband when he was arrested. One of the officers, Danielle Gray, saw Smoot outside the residence, in its backyard, but never saw him exit the house. The other officer, Sergeant Bergling, first saw Smoot after he had been subdued in the backyard, whereupon he seized the loaded revolver from Smoot's waistband. The government also called an official of Smith and Wesson, who confirmed that the revolver seized from Smoot had been manufactured in Massachusetts in 1975 and shipped to Maryland that same year.

Smoot neither testified nor presented any evidence at trial. His lawyer informed the jury during argument, however, that Smoot did not contest having possessed the .38 Smith and Wesson revolver as alleged, or that the weapon had been shipped from Massachusetts to Maryland in 1975. Notably, the parties stipulated before the jury that the revolver satisfied the statutory definition of a firearm, and that Smoot had been previously convicted of a crime punishable by imprisonment for a term exceeding one year.

At the close of the evidence, the court instructed the jury on the elements of a § 922(g)(1) offense. That is, the jury was advised that the government was obliged to prove beyond a reasonable doubt "that the defendant was convicted in any court of a crime punishable by imprisonment for a term exceeding one year as charged; two, that the defendant knowingly possessed the firearm as charged; and, three, that the possession charged was in or affecting commerce." J.A. 185. Prior to the instructions being given, Smoot recited several objections to their substance, mirroring those he had argued in connection with the motion in limine. Thereafter, on the afternoon of October 12, 2010, the jury returned its guilty verdict.

The district court sentenced Smoot on April 13, 2011. At the sentencing hearing, the court denied Smoot a decrease in his offense level for acceptance of responsibility. Smoot, the court reasoned, had gone to trial on the § 922(g)(1) charge, where he had contested the essential element of whether his possession of the .38 revolver was in or affecting commerce. The court opined that Smoot's challenge was inconsistent with a finding that he had accepted responsibility for the offense conduct, and not among those "rare situations" referenced in the Sentencing Guidelines where a defendant's election to stand trial can be overlooked. *See* USSG § 3E1.1(a) cmt. n.2 (2010) (illustrating by example "rare situations" permitting defendant to insist upon trial but nevertheless receive credit for acceptance of responsibility). Relatedly, the court found that Smoot could have preserved his challenges for appeal without requiring the government and the court to endure a jury trial.

Smoot was determined to be an armed career criminal under 18 U.S.C. § 924(e). His criminal history level of VI, combined with an offense level of 33, resulted in an advisory Guidelines range of 235 to 293 months in prison. The district court, by its judgment of conviction dated April 14, 2011, opted to impose the 235-month minimum. By notice filed

April 21, 2011, Smoot appeals his conviction and sentence. We possess jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

We review de novo a defendant's constitutional challenge to a criminal statute. *See United States v. Moore*, 666 F.3d 313, 316 (4th Cir. 2012). We review for abuse of discretion a defendant's claim that a trial court erroneously admitted or excluded evidence, or misinstructed the jury. *See United States v. Hornsby*, 666 F.3d 296, 307, 310 (4th Cir. 2012). Finally, a court's refusal to grant a sentencing reduction will not be disturbed absent clear error. *See United States v. Jeffery*, 631 F.3d 669, 678 (4th Cir. 2011).

## III.

On appeal, Smoot presses his as-applied challenge to § 922(g)(1) by reiterating that, even as a convicted felon, he was entitled under the Second Amendment to possess a firearm in his home for self-defense purposes.[4] Next, he asserts that the district court erred in instructing the jury on the interstate commerce nexus element of the § 922(g)(1) offense, and in not permitting him to argue at trial consistently with his own proposed instruction. Finally, Smoot maintains that he was erroneously denied a sentencing reduction for acceptance of responsibility. We assess these contentions in turn.

## A.

In *District of Columbia v. Heller*, the Supreme Court identified an individual right to keep and bear arms embodied in

---

[4]We are satisfied to summarily reject the proposition that, under *Heller*, the government was required to assume the burden and prove, as an additional element of the § 922(g)(1) offense, that Smoot did not possess the .38 revolver in his home for self-defense purposes.

the Second Amendment, without any connection to militia service. *See* 128 S. Ct. 2783, 2786 (2008).[5] The Court never-theless acknowledged that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 2816. The *Heller* Court recited certain familiar limitations on the arms that may be possessed by citizens, observing that "presumptively lawful regulatory measures" may be used by the government to enforce those and similar limitations. *Id.* at 2814, 2816-17.[6] As the Court explained, such "presumptively lawful measures" include prohibitions on the possession of firearms by felons and the mentally ill, regulations for pos-sessing firearms in "sensitive places such as schools and gov-ernment buildings," and regulations governing the sale of firearms. *Id.* at 2816-17.

The record reveals several factual obstacles that hinder Smoot from presenting his Second Amendment challenge in the light he would prefer. Smoot contends that he was arrested

---

[5]The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

[6]In *Heller*, the Supreme Court referred to "longstanding prohibitions on the possession of firearms by felons," such as § 922(g)(1), as presump-tively lawful regulatory measures. 128 S. Ct. at 2816-17. Several of our sister circuits have rejected constitutional challenges to § 922(g)(1), and those decisions have usually been "based at least in part on the 'presump-tively lawful' language from *Heller*." *United States v. Moore*, 666 F.3d 313, 317 (4th Cir. 2012)(citing *United States v. Torres-Rosario*, 658 F.3d 110, 113 & n.1 (1st Cir. 2011); *United States v. Barton*, 633 F.3d 168, 170–75 (3d Cir. 2011); *United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir.), cert. denied, 130 S. Ct. 3399 (2010); *United States v. Williams*, 616 F.3d 685, 691–94 (7th Cir.), cert. denied, 131 S. Ct. 805 (2010); *United States v. Vongxay*, 594 F.3d 1111, 1114–15 (9th Cir.), cert. denied, 131 S. Ct. 294 (2010); *United States v. Khami*, 362 F. App'x. 501, 507-08 (6th Cir.), cert. denied, 130 S. Ct. 3345 (2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009), cert. denied, 130 S. Ct. 1686 (2010); *United States v. Anderson*, 559 F.3d 348, 352 n.6 (5th Cir.), cert. denied, 129 S. Ct. 2814 (2009); *United States v. Stuckey*, 317 F. App'x. 48, 50 (2d Cir. 2009); *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011)).

inside of his home in possession of the loaded .38 Smith and Wesson revolver. There is no evidentiary support, however, for the proposition that Smoot ever lived at 4404 Oliver Street, but merely conflicting representations made by the lawyers at the pretrial hearing on the government's motion in limine. The government asserted, for example, that the residence on Oliver Street was actually a "flop house" or "crack house" for drug use, pointing out that Smoot gave a different address as his residence when arrested. The defense countered that Smoot had actually lived at the Oliver Street house, as indicated by some of his personal property being found inside. *See* J.A. 75-76.[7]

Moreover, the trial record persuasively indicates, through the uncontroverted testimony of two police officers, that Smoot was arrested in the backyard of 4404 Oliver Street, i.e., within what could be considered the curtilage of the residence. Smoot appears to assume for purposes of his *Heller* argument, without having recognized or argued the point, that a home's curtilage is equivalent to the home itself. In any event, we need not resolve here whether Smoot was ever inside the residence, whether it was in fact his residence, or whether the Second Amendment applies to a curtilage in the context of an attempted defense to a § 922(g)(1) prosecution. Even if we grant Smoot the benefit of the doubt on all those points, his as-applied challenge to his conviction fails.

As we recently recognized in *United States v. Moore*, 666 F.3d 313 (4th Cir. 2012), the vast majority of our sister circuits have rejected similar challenges to § 922(g)(1). *See id.* at 316-17; *supra* note 6. Our friend Judge Agee acknowledged in *Moore*, however, the possibility that presumptively lawful measures could yet be unconstitutional if confronted with a proper as-applied challenge. *See Moore*, 666 F.3d at 319; *United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010).

---

[7]At trial, neither party presented any evidence of where Smoot lived. Indeed, there was no issue raised at trial concerning where he lived.

That situation does not exist here; *Chester* and *Moore* are dispositive of the issue in Smoot's case. *Chester* established a two-prong test for assessing a Second Amendment challenge. The first prong, reflecting *Heller*'s observation that the Second Amendment embodies rights existing at its ratification, requires our historical review to evaluate whether those rights, as understood in 1791, are "burdened or regulated" by the statute in question. *Chester*, 628 F.3d at 680. If so, under the second prong, the statute must pass constitutional muster in accordance with the appropriate level of judicial scrutiny. *Id. Moore* refined and crystallized our approach, however, explaining that "the *Chester* analysis is more streamlined when a presumptively lawful regulatory measure is under review." *Moore*, 666 F.3d at 318.

In order for Smoot to rebut the presumption of lawfulness regarding § 922(g)(1) as applied to him, he "must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Moore*, 666 F.3d at 319. In *Moore*, the defendant's criminal history placed him outside the scope of Second Amendment protections for "law-abiding responsible citizens to use arms in defense of hearth and home." *Id.* (quoting *Heller*, 128 S. Ct. 2783). Smoot's criminal history is likewise remarkably egregious, and he can hardly be considered a "law-abiding responsible citizen." Smoot therefore cannot avail himself of whatever succor *Heller* may offer.[8]

Smoot seeks to otherwise distinguish his situation from the normal application of § 922(g)(1), emphasizing that the anonymous tip leading to his arrest advised that "other people were

---

[8]Smoot's presentence report reveals he has been arrested thirty-two times and convicted sixteen times over the course of twenty-one years. *See* J.A. 236. He has accrued a wide range of convictions — including assault on a police officer, possession of various controlled substances, possession of cocaine with intent to distribute, firearms offenses, and destruction of property — which in the aggregate demonstrate a pattern of criminality placing his character well outside any definition of "law-abiding." J.A. 235-36.

looking for him." J.A. 127. The meaning of that cryptic language, however, was the subject of dispute. The government, in the pretrial proceedings, characterized the tip as acknowledging that other members of law enforcement were seeking to arrest Smoot, while the defense countered that it reflected a threat on Smoot's life. Even taking the defense's view, there is no indication in the record that Smoot himself knew of a possible threat, or that there could be dire consequences if the threat were credible. Like the threat in *Moore* — the potential for being robbed in a bad neighborhood — any threat to Smoot was "far too vague and unsubstantiated to remove his case from the typical felon in possession case." *Moore*, 666 F.3d at 320. In any event, had there been a credible threat against Smoot, his appropriate response would have been to seek the aid of law enforcement, rather than arm himself.

The Third Circuit's decision in *United States v. Barton*, 633 F.3d 168 (3rd Cir. 2011), illustrates the typical felon-in-possession case. The *Barton* court recognized that a felon maintains an interest in securing the "defense of hearth and home," but ruled that a felony conviction nonetheless excises the felon's right to possess arms for that purpose. *Barton*, 633 F.3d at 175.[9] As the court explained, § 922(g)(1), like other disabilities, "does not depend on how or for what reason the right is exercised." *Id.*

Assuming, as we did in *Moore*, that a criminal defendant may demonstrate, in an appropriate case, that § 922(g)(1) is being applied to him inconsistently with the Second Amendment, Smoot's situation falls far short of any such hypothetical. Put simply, the circumstances surrounding Smoot's possession of the loaded .38 Smith and Wesson revolver in his waistband in the backyard on Oliver Street do not distin-

---

[9]The court of appeals in *Barton* identified disabilities accompanying a felony conviction that the Supreme Court has already found constitutional, including disenfranchisement and restrictions on the right to travel. *See Barton*, 633 F.3d at 175 (citations omitted).

guish his challenge from the typical application of § 922(g)(1). We are therefore satisfied that Smoot has failed to rebut the presumptively lawful status of the statute under which he was prosecuted.

B.

Smoot's objections relating to the interstate commerce nexus element of his conviction are twofold. Smoot first contends that the district court erred as a matter of law in rejecting his proposed jury instruction, *see supra* note 3, and denying him the opportunity to make arguments and present trial evidence contesting the legal sufficiency of the government's proof. Secondly, Smoot maintains that the instruction actually given the jury resulted in a directed finding on that element, contrary to *United States v. Gaudin*, 515 U.S. 506 (1995).

On the interstate commerce nexus element of § 922(g)(1), the court instructed the jury, in pertinent part:

> [T]he third element that the government must prove beyond a reasonable doubt is that the firearm the defendant is charged with possessing was in or affecting interstate or foreign commerce. This means that the government must prove that at some point prior to the defendant's possession, the firearm had traveled in interstate commerce.
>
> It is sufficient for the government to satisfy this element by proving that at any time prior to the date charged in the indictment, the firearm crossed a state line or the United States border.
>
> * * *
>
> In this regard, there has been evidence that the firearm in question was manufactured in a different

state than the state where the defendant is charged with possessing it. *You are permitted to infer from this fact that the firearm traveled in interstate commerce. However you are not required to do so.*

J.A. 187-88 (emphasis added).

Smoot acknowledges that our decision in *United States v. Gallimore*, 247 F.3d 134 (4th Cir. 2001), explains that the interstate commerce nexus may be established at trial simply by showing that a firearm was manufactured somewhere other than the state in which it was discovered. *See id.* at 138. There, we explicitly rejected the defendant's argument that the government was required to "prove the firearm possessed in violation of §922(g) was involved in interstate commerce beyond mere transportation across state lines." *Id.* In that sense, then, Smoot seeks futilely to simply reargue the wisdom of our binding precedent. *See Dickerson v. United States*, 530 U.S. 428, 443 (2000) ("While stare decisis is not an inexorable command, . . . the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some special justification.") (internal citations and quotation marks omitted).

In the highly unlikely circumstance that we were disposed to entertain such an argument, the Supreme Court's decision in *Scarborough v. United States*, 431 U.S. 563 (1997), would make short shrift of it. The *Scarborough* Court perceived "no indication that Congress intended to require any more than the minimal nexus that the firearm [was], at some time, in interstate commerce." *Id.* at 575.

It is elementary that a jury instruction is not flawed if it is a fair and accurate statement of law. *See United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996). The converse is undoubtedly true of statements of law that are not fair or accurate. The instruction given by the district court on the interstate commerce nexus element fairly and accurately reflected Supreme

Court and circuit precedent. By contrast, Smoot's proposed instruction, requiring the government to show that his continuing possession of the firearm had an impact on interstate commerce, was clearly contrary to *Scarborough* and *Gallimore*, and thus an incorrect statement of law.[10]

Though the district court's instruction correctly stated the applicable law, it would yet be impermissible insofar as it prevented the jury from deciding an element of the charged offense. Smoot suggests that the first paragraph of the court's instruction "did not leave the jury free to acquit if it believed that shipping the firearm across state lines 35 years ago was not sufficient to establish that Defendant Smoot's possession was 'in or affecting commerce.'" Appellant's Reply Br. 16. Smoot's contention is undermined by the remainder of the instruction, however, which unambiguously instructs the jury to decide for itself whether the interstate nexus element had been proven. Because the question was left to the jury, the challenged instruction was not defective.

The Second Circuit's decision in *United States v. Parkes*, 497 F.3d 220 (2d Cir. 2007), on which Smoot additionally relies, is readily distinguishable. In *Parkes*, a Hobbs Act prosecution, the government asked the district court to instruct that if the robbery's object was "to obtain illegal drugs or money earned from the sale of drugs, the requirement of an effect on interstate commerce is satisfied." 497 F.3d at 230. Inasmuch as that language could have described any garden-variety drug robbery, the instruction assumed that the inter-

---

[10]From the outset of the proceedings, Smoot indicated that he planned to adduce evidence to counter the government's anticipated proof as to the interstate commerce nexus element. Smoot's plan was properly derailed by the district court. The trial court can limit evidence that may confuse the jury. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Evidence and arguments that contradict established law present a palpable risk of confusing the jury as to the legal standard it must apply. Smoot's plan of attack being clearly contrary to established precedent, the district court's curtailing of Smoot's presentation was well within its discretion.

state commerce nexus had been met, rather than reserving the question for the jury.

The court of appeals in *Parkes* concluded that the trial court had properly rejected the instruction as invading the province of the jury: "[t]hat instruction would have impermissibly violated Parkes's 'right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged.'" *Id.* at 230 (quoting *Gaudin*, 515 U.S. at 522-23.). The established precedent supporting the instruction in Smoot's case, together with the explicit language properly reserving the jury's province, defy any similarity to *Parkes*. We therefore reject as meritless Smoot's arguments on appeal concerning the interstate commerce nexus element.

## C.

Smoot's final contention is that his offense level under the Guidelines should have been decreased by 2 levels for acceptance of responsibility. Although Smoot's presentence report recommended that he be awarded the decrease, the district court declined at hearing to adopt the probation officer's recommendation. Smoot was found to have a criminal history level of VI and an offense level of 33, resulting in an advisory sentencing range of 235 to 293 months. With a 2-level decrease, Smoot's offense level would have been 31 and the advisory range 188 to 235 months. Smoot characterizes his position on acceptance of responsibility as consistent with Application Note 2 of Guidelines § 3E1.1(a), which advises:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt . . . . In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where

a defendant goes to trial to assert and preserve issues
that do not relate to factual guilt (e.g., to make a con-
stitutional challenge to a statute or a challenge to the
applicability of a statute to his conduct).

USSG § 3E1.1(a) cmt. n.2 (2010).

Smoot advances two grounds supporting his assertion that
the district court erroneously denied the offense level decrease
for acceptance of responsibility. First, Smoot reiterates that he
was not allowed to affirmatively present evidence or argu-
ment supporting his interpretation of the interstate commerce
nexus element; thus, he could not have actually contested his
factual guilt. Second, Smoot disagrees with the court's finding
that a trial was unnecessary to preserve his constitutional
challenges.

As we have emphasized, Smoot did not dispute the govern-
ment's evidence. Indeed, the parties stipulated that Smoot was
a felon in possession of a firearm that had travelled in inter-
state commerce thirty-five years earlier. *See* J.A. 108-09, 191-
92. Smoot reaffirmed the stipulation at closing argument, stat-
ing to the jury:

> We do not dispute the *only evidence* that the govern-
> ment has offered with respect to in or affecting com-
> merce. The *only evidence* of in or affecting
> commerce that the government offered is that 35
> years ago this firearm was shipped into the state of
> Maryland *and that's it*.

*Id.* at 192 (emphasis added).

The court acknowledged Smoot's concession on the factual
evidence supporting the interstate commerce nexus element,
but stressed his refusal to agree to the legal conclusion that
the firearm was "in or affecting commerce." *Id.* at 230. The
court thus understood Smoot's defense to have implicitly

raised the argument that the evidence on that element was insufficient to convict. *See id.* at 162, 226-27 (reflecting the court's observations that defense contested the interstate commerce nexus at trial and sentencing).

Smoot nevertheless contends that he cannot be considered to have contested "the essential factual elements of guilt," as contemplated by Application Note 2, because he was not allowed to squarely and pointedly argue that the government's proof of the revolver's nexus to interstate commerce was too remote in time to the charged possession. *See* Appellant's Br. 31-32. It is plain, however, that regardless of Smoot's assertion that his case was handicapped, the interstate commerce nexus element was presented to the jury as a point in controversy that it was required to decide. Defense counsel's closing argument hammering the "only evidence" of an interstate commerce nexus invited the jury to conclude that the government had not proved each and every element of its case.

We agree with the government that Smoot's situation is reminiscent of the one in *United States v. Dickerson*, 114 F.3d 464 (4th Cir. 1997). In *Dickerson*, a perjury prosecution, the defendant did not contest the facts presented, i.e., that he had made certain false statements before the grand jury, but insisted that the statements lacked materiality, an essential element of the offense. We nonetheless concluded that the defendant's argument amounted to "[a] [challenge] [to] his 'factual guilt.'" *Id.* at 470. Because Smoot likewise attacked the legal sufficiency of an essential element of his offense, he contested his guilt in fact. Thus, the district court appropriately denied him an offense level decrease for acceptance of responsibility.

Finally, Smoot maintains that there was no alternative to a trial that would have allowed him to maintain his appellate rights. The district court rejected that proposition, however, finding that Smoot could have, for example, agreed to a comprehensive stipulation of facts, which would have preserved

his grounds for appeal without putting the government to its burden of proof. We defer to the court's finding as not clearly erroneous, and we will therefore not disturb its sentencing calculus.

## IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

*AFFIRMED*