Reversed and remanded by published opinion. Judge SHEDD wrote the majority opinion, in which Senior Judge HAMILTON joined. Judge MOON wrote a dissenting opinion.
OPINION
SHEDD, Circuit Judge:
The Commonwealth of Virginia, through its Alcoholic Beverage Control Board (“the Board”), regulates advertisements for alcohol. In this action, Educational Media Company at Virginia Tech (The Collegiate Times) and The Cavalier Daily, Inc. (The Cavalier Daily) (collectively, “the college newspapers”) argue that two of the Board’s regulations restricting alcohol advertisements (3 Va. Admin. Code §§ 5-20-40(A) & (B)(3)) violate their First Amendment rights. The district court granted the college newspapers’ motion for summary judgment, declared both provisions facially unconstitutional, and permanently enjoined their enforcement. On appeal, the Board challenges only the court’s invalidation of § 5-2(M0(B)(3). For the reasons set forth below, we reverse and remand.
I.
We review the district court’s order granting summary judgment de novo, viewing the evidence in the light most favorable to the Board. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir.2004). The Board, a subsidiary of the Department of Virginia Alcoholic Beverage Control, is charged with regulating the importation and distribution of alcohol within the Commonwealth of Virginia. See Va.Code Ann. § 4.1-103. *587 To carry out this duty, the Board has the authority to “promulgate reasonable regulations.” Va.Code Ann. § 4.1-111(A).
The Board exercises its authority in various ways to fight illegal and abusive drinking on college campuses in the Commonwealth. For example, the Board prohibits various types of advertisements for alcohol in any “college student publication,” which it defines as any college or university publication that is: (1) prepared, edited, or published primarily by its students; (2) sanctioned as a curricular or extracurricular activity; and (3) “distributed or intended to be distributed primarily to persons under 21 years of age.” 3 Va. Admin. Code § 5-20-40(B)(3). Qualifying publications may not print advertisements for beer, wine, or mixed beverages unless the ads are “in reference to a dining establishment.” Id. These exempted alcohol advertisements may not refer to brand or price, but they may use five approved words and phrases, including “A.B.C. [alcohol beverage control] on-premises,” “beer,” “wine,” “mixed beverages,” “cocktails,” or “any combination of these words.” Id.
In addition to this advertising ban, the Board publishes educational pamphlets on the dangers of underage and binge drinking on college campuses, targeted at both underage students and their parents. Further, the Board enforces its regulations by carefully allocating its limited number of officers to target “big events that are likely to gather college students,” J.A. 257, and the Board gives grants to colleges and college communities to supplement these targeted efforts.
The Collegiate Times is a student-run newspaper at Virginia Polytechnic Institute and State University, and The Cavalier Daily is a student-run newspaper at the University of Virginia. The newspapers rely on advertisement revenue to operate, and because of the ban embodied in § 5-20-40(B)(3), each loses approximately $30,000 a year in advertising revenue.[1]
The college newspapers filed a complaint, alleging that § 5-20-40(B)(3) violates their First Amendment rights. The college newspapers mounted both facial and as-applied challenges to § 5-20-40(B)(3). For relief, the college newspapers sought a declaration that § 5-20-40(B)(3) is unconstitutional and an injunction prohibiting its enforcement. After both sides moved for summary judgment, the district court declared § 5-20-40(B)(3) facially unconstitutional as an invalid ban on commercial speech.[2] Subsequently, the *588 court permanently enjoined the enforcement of § 5-20-40(B)(3). The Board now appeals.
II.
The Board argues that the district court erred by determining that § 5-20-40(B)(3) facially violates the First Amendment.[3] Both parties agree that to determine whether a regulatory burden on commercial speech violates the First Amendment, we apply the four-part test set forth in Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).
Under Central Hudson, we must first consider whether the commercial speech is protected by the First Amendment. If it is, the government must then assert a “substantial” interest to justify its regulation. We must then decide whether the regulation directly advances the government’s interest and whether the regulation is not “more extensive than is necessary to serve that interest.” Id. This test applies to both facial and as-applied challenges. See, e.g., Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico, 478 U.S. 328, 339-44, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986) (facial challenge); Greater New Orleans Broad. Ass’n, Inc. v. United States, 527 U.S. 173, 183-95, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999) (as-applied challenge). However, the type of challenge to a provision — facial or as-applied — dictates the state’s burden of proof.
 “[A] facial challenge to an ordinance restricting commercial speech may be resolved as a question of law when the government meets the burden placed on it by Central Hudson. ” Penn Advertising of Baltimore, Inc. v. Schmoke, 63 F.3d 1318, 1322-23 (4th Cir.1995), vacated on other grounds, Penn Advertising of Baltimore, Inc. v. Schmoke, 518 U.S. 1030, 116 S.Ct. 2575, 135 L.Ed.2d 1090 (1996). The government may meet this burden by reference to the challenged regulation and its legislative history. Id. at 1323. Therefore, a court considers the facial constitutionality of a regulation without regard to its impact on the plaintiff asserting the facial challenge.[4] Id.
A.
We first consider whether the First Amendment protects the commercial speech in this case. To qualify for First Amendment protection, commercial speech must (1) concern lawful activity and (2) not *589 be misleading. Central Hudson, 447 U.S. at 566-68, 100 S.Ct. 2343. The Board argues that § 5-20-40(B)(3) only regulates commercial speech concerning unlawful activity because it only applies to student newspapers which are “distributed or intended to be distributed primarily to persons under 21 years of age,” § 5-20-40(B)(3), and in Virginia, it is illegal to sell alcohol to anyone under twenty-one. Va. Code Ann. § 4.1-302.
We have recognized that advertisements for age-restricted — but otherwise lawful — products concern lawful activity where the audience comprises both underage and of-age members. See, e.g., West Virginia Ass’n of Club Owners and Fraternal Serv. Inc. v. Musgrave, 553 F.3d 292, 302 (4th Cir.2009) (video lottery ads in retail stores); Anheuser-Busch, Inc. v. Schmoke, 63 F.3d 1305, 1313 (4th Cir.1995) (Anheuser-Busch I) (alcohol advertisements in public), vacated on other grounds, Anheuser-Busch, Inc. v. Schmoke, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996). On its face, § 5-20-40(B)(3) does not restrict commercial speech solely distributed to underage students; rather, it applies to commercial speech that, though primarily intended for underage students, also reaches of-age readers. Therefore, the commercial speech regulated by § 5-20-40(B)(3) concerns lawful activity.
Further, because this is a facial, preenforcement challenge, “[w]e assume that the speech is not misleading because ... [the Board] has not provided evidence that the speech is actually misleading, and there is no evidence that the advertising restrictions were enacted to prevent the dissemination of misleading information.” Musgrave, 553 F.3d at 302. The district court, therefore, properly found that § 5-20-40(B)(3) restricts commercial speech protected by the First Amendment.
B.
“Next, we ask whether the asserted governmental. interest is substantial.” Central Hudson, 447 U.S. at 566, 100 S.Ct. 2343. The Board contends that it has a substantial interest in combating the serious problem of underage drinking and abusive drinking by college students. The college newspapers do not dispute that this interest is substantial. See Appellee’s Br. 14. Therefore, like the district court, we find the Board’s interest to be substantial.
C.
We next consider whether the advertising ban “directly and materially” advances the government’s substantial interest. Musgrave, 553 F.3d at 303 (internal citation and quotation omitted). To determine whether this prong is satisfied “we focus on the relationship between the State’s interests and the advertising ban.” Central Hudson, 447 U.S. at 569, 100 S.Ct. 2343. This relationship, or link, need not be proven by empirical evidence; rather, it may be supported by “history, consensus, and simple common sense.” Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 555, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001) (quoting Florida Bar v. Went For It, Inc., 515 U.S. 618, 628, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995)). However, the link is insufficient if it is irrational, contrary to specific data, or rooted in speculation or conjecture. Musgrave, 553 F.3d at 304.
The Board asserts that history, consensus, and common sense support the link between advertising bans in college newspapers and a decrease in demand for alcohol among college students. The Board cites judicial decisions recognizing this general link and argues that, here, this link is extraordinarily strong because college newspapers, a targeted form of media bearing the name of the college, attract more attention among college stu *590 dents than other forms of mass media. The Board also notes that, given the amount of money alcohol vendors spend on advertisement, it is illogical to think that alcohol ads do not increase demand. The college newspapers counter by arguing that: (1) there is no evidence that alcohol advertising bans in college publications decrease demand among college students and (2) a ban on alcohol advertising in college publications is ineffective because college students see ads for alcohol in various other forms of media.[5] The district court agreed with the college newspapers.
We, however, find the link between § 5-20-40(B)(3) and decreasing demand for alcohol by college students to be amply supported by the record, and the district court erred by finding otherwise. Though the correlation between advertising and demand alone is insufficient to justify advertising bans in every situation, Musgrave, 553 F.3d at 304, here it is strengthened because “college student publications” primarily target college students and play an inimitable role on campus. See J.A. 259 (“The college publication is where [college students are] looking to find out what’s going on in their college community, what’s happening.”). This link is also supported by the fact that alcohol vendors want to advertise in college student publications. It is counterintuitive for alcohol vendors to spend their money on advertisements in newspapers with relatively limited circulation, directed primarily at college students, if they believed that these ads would not increase demand by college students. The college newspapers fail to provide evidence to specifically contradict this link or to recognize the distinction between ads in mass media and those in targeted local media.
The district court, therefore, erred by finding that this link did not satisfy Central Hudson’s third prong. Even though this link is established, we must still decide whether § 5-20-40(B)(3) satisfies Central Hudson’s fourth prong.
D.
Under Central Hudson’s fourth prong, commercial speech restrictions must be “narrowly drawn.” Central Hudson, 447 U.S. at 565, 100 S.Ct. 2343. The restrictions do not need to be the least restrictive means possible, but they do need to have a “reasonable fit with the government’s interest — a fit ‘that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.’ ” Musgrave, 553 F.3d at 305 (quoting Greater New Orleans Broad., 527 U.S. at 188, 119 S.Ct. 1923). Further, the state “must consider alternatives to regulating speech to achieve its ends.” Musgrave, 553 F.3d at 305. Where a state has a comprehensive scheme to serve its interest, limitations on commercial speech should “complement non-speech alternatives,” not serve as substitutes for them. See id. at 306.
Here, § 5-20-40(B)(3) is narrowly tailored to serve the Board’s interest of establishing a comprehensive scheme attacking the problem of underage and dangerous drinking by college students. Section 5-20-40(B)(3) is not a complete ban on alcohol advertising in college newspapers. First, it only prohibits certain types of alcohol advertisements. In fact, it allows *591 restaurants to inform readers about the presence and type of alcohol they serve. Second, the restriction only applies to “college student publications” — campus publications targeted at students under twenty-one. It does not, on its face, affect all possible student publications on campus. Therefore, § 5-2(M0(B)(3) is sufficiently narrow.
Further, the Board not only considered non-speech related mechanisms to serve its interest, it actually implemented them through education and enforcement programs. Section 5-2CM0(B)(3) complements these non-speech alternatives. Within the Board’s multi-pronged attack on underage and abusive drinking, § 5-20-40(B)(3) constitutes an additional prevention mechanism. Without it, either education or enforcement efforts would have to be increased, and given the Board’s limited resources, § 5-20-40(B)(3) is a cost-effective prevention method that properly complements their non-speech related efforts.
The college newspapers argue that § 5-20-40(B)(3) is not the least restrictive means to serve the Board’s interest because there are other, more effective ways to fight underage and abusive drinking without restricting speech. However, § 5-20-40(B)(3) does “not necessarily [need to be] the single best disposition^] but one whose scope is in proportion to the interest served.” Musgrave, 553 F.3d at 305 (quoting Greater New Orleans Broad., 527 U.S. at 188, 119 S.Ct. 1923). The Board has shown that § 5-20-40(B)(3) is an integral, reasonable fit to serve its interests. The possible existence of more effective methods does not undermine § 5-20-40(B)(3), especially in light of its role in a comprehensive scheme to fight underage and abusive drinking. The district court, therefore, erred by finding § 5-20-40(B)(3) to be overly broad.
E.
On its face, the Board’s ban on alcoholic advertisements in college student publications passes muster under Central Hudson. The district court, therefore, erred in finding otherwise.
III.
For the foregoing reasons, we reverse the district court’s order granting summary judgment, vacate its permanent injunction, and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED

. The district court determined that both college newspapers were “college student publications” as defined by § 5-20-40(B)(3). J.A. 73 & 75. However, the parties agree that a majority of the readership of the college newspapers is over the age of twenty-one. J.A. 85. Though this concession appears to preclude the college newspapers from qualifying as “college student publications,” in a pre-enforcement challenge, the college newspapers need only demonstrate " 'a credible threat of prosecution’ under the statute or regulation.” Virginia Soc’y for Human Life, Inc. v. FEC, 263 F.3d 379, 386 (4th Cir.2001) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). Here, an Alcoholic Beverage Control Compliance Officer specifically advised The Collegiate Times that they would violate § 5-20-40(B)(3) if they published a specific alcohol advertisement, J.A. 73, and the Chief Operating Officer and Secretary to the Board of the Department of Alcoholic Beverage Control opined that both college newspapers would qualify as college student publications. J.A. 523. Therefore, regardless of whether § 5-20-40(B)(3) applies to these college newspapers, they have a sufficient credible fear of prosecution under this regulation.

. The district court did not reach the college newspapers’ alternative arguments that § 5-20-40(B)(3) violates the First Amendment because (1) as-applied, it unconstitutionally restricts commercial speech under Central Hudson Gas & Elec. Corp. v. Public Serv. Comm’n of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 *588 L.Ed.2d 341 (1980), and (2) on its face and as-applied, it unconstitutionally discriminates against a particular segment of the media under Pitt News v. Pappert, 379 F.3d 96, 109 (3rd Cir.2004). Though the college newspapers reiterate these alternative arguments on appeal, we decline to address them in the first instance.

. The Board also argues that the district court erred because it entertained a facial challenge to § 5-20-40(B)(3). Although there is judicial disfavor of facial challenges, there is no proscription on such challenges. See Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449-51, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (discussing the problems with facial challenges without banning their use); West Virginia Ass'n of Club Owners and Fraternal Serv. Inc. v. Musgrave, 553 F.3d 292, 300-02 (4th Cir.2009) (same).

. The appeal before us is based solely on a facial challenge to § 5-20-40(B)(3). The dissent, like the district court, blurs the distinction between a facial and an as-applied challenge. For example, both the dissent and the district court opinion rely on Pitt News which is an as-applied challenge. 379 F.3d at 113 (finding the challenged regulation "unconstitutional as applied”). Tellingly, in a subsequent order, the district court acknowledged that its initial order invalidating § 5-20-40(B)(3) created this confusion. J.A. 105 ("The Court now makes clear that, consistent with the remainder of the opinion, the 'as applied' language should not have appeared.”).

. The college newspapers also argue that, even if there is a link between advertising bans and demand, § 5-20-40(B)(3)’s exemptions undermine its effectiveness. This argument fails to take into account the actual scope of § 5-20-40(B)(3). Even with its exemptions, it proscribes without exception all alcohol ads for non-restaurants. Therefore, in light of the full scope of § 5-20-40(B)(3), its limited exception for restaurants does not render it futile.