**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1632**

ROBERT TIMOTHY HARLEY,

        Plaintiff - Appellant,

    v.

ROBERT M. WILKINSON, Acting Attorney General of the United States; REGINA LOMBARDO, Acting Director, Bureau of Alcohol, Tobacco, Firearms, and Explosives,

        Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T.S. Ellis, III, Senior District Judge.  (1:18-cv-00396-TSE-IDD)

Argued:  September 10, 2020           Decided:  February 22, 2021

Before KEENAN, WYNN, and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Judge Keenan wrote the majority opinion, in which Judge Wynn joined.  Judge Wynn wrote a concurring opinion.  Judge Richardson wrote a dissenting opinion.

**ARGUED:**  Marvin David Miller, LAW OFFICE OF MARVIN D. MILLER, Alexandria, Virginia, for Appellant.  Thais-Lyn Trayer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.  **ON BRIEF:**  Joseph H. Hunt, Assistant Attorney General, Mark B. Stern, Patrick G. Nemeroff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for

Appellees.

_____

BARBARA MILANO KEENAN, Circuit Judge:

In 1993, Robert Harley (Harley) was convicted of misdemeanor assault and battery of a family member, in violation of Virginia Code § 18.2-57.2. As a result of this conviction, he is prohibited for life under 18 U.S.C. § 922(g)(9) from possessing a firearm unless he obtains a pardon or an expungement of his conviction. Harley filed this action seeking a declaration that Section 922(g)(9) is unconstitutional as applied to him. He argues that he no longer should be subject to the prohibition because he has demonstrated good behavior during the 27 years since his conviction.

The district court granted summary judgment to the defendants, the United States Attorney General and the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (collectively, the defendants), concluding that the prohibition in Section 922(g)(9) satisfies intermediate scrutiny as applied to Harley. After assuming without deciding that domestic violence misdemeanants retain some level of Second Amendment protection, the district court held that Section 922(g)(9) provides a reasonable fit for the governmental objective of protecting families from gun violence caused by convicted domestic abusers.

Upon our review, we agree with the district court and hold that 18 U.S.C. § 922(g)(9) is constitutional as applied to Harley. In reaching this conclusion, we adopt the approach of our sister circuits and decline to read into the statute an exception for good behavior or for the passage of time.

# I.

In reviewing the district court's award of summary judgment to the defendants, we state the facts and draw all reasonable inferences in the light most favorable to Harley, the nonmoving party. *Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020). After graduating from high school in 1980, Harley joined the Fairfax County Department of Public Works (the County) as an unskilled laborer. Throughout his thirty-year career with the County, Harley was promoted numerous times, eventually rising to the rank of Industrial Electrician II. He also earned three advanced job-related certifications during his tenure. After retiring from the County, Harley began his own business as a licensed electrician.

In addition to his employment with the County, Harley served for decades as a volunteer firefighter and an emergency medical technician. He ultimately became the fire captain for the Dale City Volunteer Fire Department. Harley also was a member of the Department's board of directors. He won numerous awards for service related to his work as a volunteer firefighter.

In 1993, Harley pleaded guilty to misdemeanor assault and battery of a family member, in violation of Virginia Code § 18.2-57.2, based on an altercation he had with his then-wife. In an affidavit admitted into evidence in the present case, Harley's ex-wife stated that she continued a "friendly relationship" with Harley after the incident, and that they are "still friends to this day." Harley has not been convicted of any other crimes since the 1993 conviction. However, as noted above, Harley remains prohibited under 18 U.S.C. § 922(g)(9) from possessing a firearm based on that conviction.

4

Harley filed the present suit asserting that 18 U.S.C. § 922(g)(9) violates his Second Amendment rights and is unconstitutional as applied to him. In his complaint, Harley sought a declaratory judgment and an injunction prohibiting the government from enforcing Section 922(g)(9) against him.

After considering the parties' evidence and arguments, the district court granted the defendants' summary judgment motion, holding that Section 922(g)(9) is constitutional as applied to Harley. The court concluded that the statute satisfied the constitutional test for intermediate scrutiny, and that Harley's conviction qualified as a "misdemeanor crime of domestic violence" within the meaning of that statutory term. Harley appealed from the district court's judgment.

II.

Initially, we make two observations that inform our analysis in this case. First, we note that Harley does not challenge the fact of his conviction under Virginia Code § 18.2-57.2. Second, we emphasize that Harley does not contest the district court's conclusion that his conviction under Virginia Code § 18.2-57.2 qualifies as a misdemeanor crime of domestic violence for purposes of Sections 922(g)(9) and 921(a)(33)(A). Accordingly, we reject Harley's invitation to reweigh the facts underlying his prior Virginia conviction.

We review de novo the district court's decision granting summary judgment. *Calloway v. Lokey*, 948 F.3d 194, 201 (4th Cir. 2020); *see also United States v. Gibert*, 677 F.3d 613, 618 (4th Cir. 2012) ("We review de novo a challenge to the constitutionality of a federal statute."). A party is entitled to summary judgment if "there is no genuine dispute

5

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Section 922(g)(9) prohibits individuals previously convicted of a "misdemeanor crime of domestic violence," as defined in 18 U.S.C. § 921(a)(33)(A), from possessing a firearm. As an initial matter, we observe that Harley does not challenge on appeal the district court's determination that his Virginia conviction qualifies under Section 922(g)(9) as a "misdemeanor crime of domestic violence." Instead, Harley argues that the district court improperly conducted its as-applied analysis under the Second Amendment because the court failed to consider Harley's personal history following his conviction. He contends that his individual characteristics, namely, the long passage of time since his misdemeanor conviction and his exemplary life in the many years since his conviction, render Section 922(g)(9) unconstitutional as applied to him.

In response, the defendants contend that under our decision in *United States v. Staten*, 666 F.3d 154 (4th Cir. 2011), the district court properly rejected Harley's as-applied challenge. According to the defendants, Harley's challenge is foreclosed because we held in *Staten* that Section 922(g)(9) survives intermediate scrutiny by providing a reasonable fit to meet a substantial governmental interest. We agree with the defendants' argument.

Like our sister circuits, we apply a two-prong approach in considering as-applied Second Amendment challenges. *United States v. Chester*, 628 F.3d 673, 680-83 (4th Cir. 2010); *see also United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *United States v. Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013); *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d

1318, 1322 (11th Cir. 2015); *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 685-86 (6th Cir. 2016) (en banc); *United States v. Jimenez*, 895 F.3d 228, 232 (2d Cir. 2018); *Medina v. Whitaker*, 913 F.3d 152, 156 (D.C. Cir. 2019); *Kanter v. Barr*, 919 F.3d 437, 441-42 (7th Cir. 2019). Under the first prong of this approach, we address whether the challenged regulation "burdens or regulates conduct that comes within the scope of the Second Amendment." *Chester*, 628 F.3d at 680. If the challenged regulation satisfies this first prong, or if we assume without deciding that the regulation meets this requirement, we turn to perform under our second prong a "means-end" review, in which we consider the regulation under the appropriate level of constitutional scrutiny. *Id.*

Here, under the first prong, we will assume without deciding that domestic violence misdemeanants are entitled to some degree of Second Amendment protection. *Staten*, 666 F.3d at 160-61. Therefore, we proceed to the second prong of the analysis, in which we apply intermediate scrutiny to consider Harley's challenge to Section 922(g)(9). *Id.* at 161; *Chester*, 628 F.3d at 683. Under the standard of intermediate scrutiny, the government bears the burden of establishing a reasonable fit between the challenged law and a substantial governmental objective. *Staten*, 666 F.3d at 161. A statute may meet this standard despite being overinclusive in nature. *Id.* at 167.

Our analysis in this case is governed directly by our decision in *Staten*, in which we rejected an as-applied Second Amendment challenge to Section 922(g)(9). *Staten*, 666 F.3d at 168. There, relying on extensive social science research presented by the government, we concluded that the government had established that:

> (1) domestic violence is a serious problem in the United States; (2) the rate of recidivism among domestic violence misdemeanants is substantial; (3) the use of firearms in connection with domestic violence is all too common; (4) the use of firearms in connection with domestic violence increases the risk of injury or homicide during a domestic violence incident; and (5) the use of firearms in connection with domestic violence often leads to injury or homicide.

*Id.* at 167. Based on this record, we concluded that Section 922(g)(9) survived intermediate scrutiny. *Id.* at 168. We explained that despite the possibly overinclusive "net cast" by Section 922(g), the evidence showed "a reasonable fit" between the statute and the substantial governmental objective of reducing domestic gun violence. *Id.* at 167. In reaching this conclusion, we emphasized that the fit between the statutory prohibition and the governmental interest need only be a reasonable fit, not a perfect one. *Id.* at 162. Moreover, in making this determination, we did not consider any individual characteristics of the person raising the as-applied challenge but focused entirely on the statute itself and the evidence addressing statutory purpose and fit.

In accord with our analysis in *Staten*, we decline Harley's request that we review his individual characteristics as part of our consideration of his as-applied challenge to Section 922(g)(9). Harley's suggested approach is fundamentally flawed because it effectively would create an exception to the statute that does not exist. The statute imposes a flat prohibition, with no reference to individual circumstances occurring after the disqualifying conviction. Despite its power to do so, Congress did not provide a sunset clause or a good behavior exception to the statute. *See Stimmel v. Sessions*, 879 F.3d 198, 211 (6th Cir. 2018) (citing *Chovan*, 735 F.3d at 1141-42).

We also observe that the definition of "misdemeanor crime of domestic violence" applicable in Section 922(g)(9) narrowly defines the category of prohibited individuals, by requiring that the underlying conviction have "as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A)(ii). The definition of a "misdemeanor crime of domestic violence" also requires that the conviction have been secured through a jury trial with counsel, or after an intelligent waiver of a defendant's constitutional rights. *Id.* § 921(a)(33)(B). And the statute provides that the firearm prohibition no longer applies, with some exceptions, if the domestic violence misdemeanor conviction "has been expunged or set aside" or if "the person has been pardoned or has had civil rights restored." *Id.* § 921(a)(33)(B)(ii). These requirements demonstrate Congress' ability and willingness to place limitations on a statutory prohibition. Thus, we will not depart from the text of the statutory scheme to create by judicial fiat an exception to Section 922(g)(9).

When enacting Section 922(g)(9), Congress expressed grave concerns that the risk of escalating violence by domestic violence misdemeanants would be increased by their having access to firearms. In the context of "million[s of] acts of domestic violence, and hundreds of deaths from domestic violence, each year," Section 922(g)(9) was designed to help reduce the incidence of deaths caused by acts of domestic violence. *United States v. Castleman*, 572 U.S. 157, 159-60 (2014). Because many domestic violence offenses fail to qualify under the felon in possession prohibition in Section 922(g)(1), Section 922(g)(9) was enacted to "close a dangerous loophole." *Id.* at 160 (citation and alteration omitted). As noted above, a statutory provision can be constitutional under intermediate scrutiny despite its potentially overinclusive nature. *Staten*, 666 F.3d at 167. Thus, although

9

Harley's post-conviction life may suggest that he is not a high risk for engaging in assaultive conduct toward a family or household member, this fact merely would render the reach of the statute overinclusive, not unconstitutional.

Our conclusion is not altered by Harley's reliance on dicta in two of our prior decisions discussing the review of individual characteristics in as-applied challenges. Notably, in both those cases, we rejected as-applied challenges to Section 922(g)(1) seeking consideration of individual characteristics, emphasizing the rarity of such potential consideration. *United States v. Moore*, 666 F.3d 313, 319-20 (4th Cir. 2012); *United States v. Smoot*, 690 F.3d 215, 221 (4th Cir. 2012). For example, in *Moore* we prefaced our discussion of evaluating individual characteristics with a warning that such a framework was merely a "theoretical" possibility. 666 F.3d at 320. And in *Smoot*, we noted that any review of individual characteristics in an as-applied challenge to Section 922(g)(1) would require factual circumstances outside the "realm of ordinary challenges." 690 F.3d at 221 (citation omitted).

Moreover, our dicta in *Moore* and *Smoot*, that individual circumstances may be relevant in rare cases involving as-applied challenges to Section 922(g)(1), has limited relevance in the context of Section 922(g)(9). In contrast to the single crime identified in Section 922(g)(9), which requires "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon," 18 U.S.C. § 921(a)(33)(A)(ii), the language of Section 922(g)(1) broadly prohibits individuals convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. *Id.* § 922(g)(1). Thus, the prohibition in Section 922(g)(1) encompasses an innumerable range

10

of possible convictions and conduct, including some that potentially could exceed the statutory purpose of Section 922. In contrast, it would be an extremely rare case, if any, in which the framework "theoretically" envisioned by *Moore* and *Smoot* could be found appropriate in an as-applied challenge to Section 922(g)(9), in which the use or attempted use of physical force, or the threatened use of a deadly weapon, supporting the underlying conviction is manifestly related to the statutory prohibition.[1]

For these reasons, we adopt the approach of our sister circuits and decline to read into Section 922(g)(9) an exception for good behavior or for the passage of time following a disqualifying conviction for a misdemeanor crime of domestic violence. *See Chovan*, 735 F.3d at 1142; *Stimmel*, 879 F.3d at 210-11; *see also Binderup v. Att'y Gen.*, 836 F.3d 336, 349 (3d Cir. 2016) (en banc) (rejecting a passage of time exception for the felon in possession of a firearm prohibition in Section 922(g)(1)). Congress, not the courts, must decide whether exceptions for good behavior or the passage of time should be added to Section 922(g)(9). Thus, while we commend Harley's apparently model life after his

_____

[1] Harley's heavy reliance on *United States v. Hosford*, 843 F.3d 161 (4th Cir. 2016), is unavailing. *Hosford* involved facial and as-applied challenges to 18 U.S.C. § 922(a)(1)(A), which prohibits "*any* person . . . except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." § 922(a)(1)(A) (emphasis added); *see Hosford*, 843 F.3d at 165. In rejecting the as-applied challenge, we determined that the challenger's individual circumstances fit within the statutory purpose of the prohibition. *Hosford*, 843 F.3d at 169–70. Such an approach is inapplicable here. Section 922(a)(1)(A)'s prohibition applies to nearly the entire population, thus encompassing a larger portion of the population than Section 922(g)(1), making its easily distinguishable from the narrow prohibition in Section 922(g)(9). And even if the decision in *Hosford* were applicable, Harley has failed to distinguish his individual circumstances from Section 922(g)(9)'s statutory purpose.

conviction, the question whether to restore his ability to obtain a firearm is a matter of public policy entrusted solely to Congress.[2]   Or, as noted, he may seek a pardon or expungement under Virginia law—the avenues for relief that Congress has already provided in the statute.

We therefore hold that the district court did not err in granting summary judgment to the defendants, and that Section 922(g)(9) is constitutional as applied to Harley. Accordingly, we affirm the district court's judgment.

*AFFIRMED*

---

[2] Harley also argues that the district court improperly relied on social science studies presented by the defendants, because those studies purportedly contain disputed material facts.  This argument lacks merit, however, because while Harley disputes the relevance of those studies to his individual circumstances, he does not challenge the conclusions reached in the studies or the methodology used.  *See Angell v. Chesapeake & Ohio Ry. Co.*, 618 F.2d 260, 262 (4th Cir. 1980) (holding the application of undisputed facts is a matter of law properly decided by courts).  Additionally, the social science studies were relevant to the government's burden of demonstrating a substantial governmental interest. *See Staten*, 666 F.3d at 163-67; *United States v. Skoien*, 614 F.3d 638, 643-44 (7th Cir. 2010) (en banc).  Therefore, we reject Harley's challenge to the district court's consideration of the social science evidence.

WYNN, Circuit Judge, concurring:

I concur entirely in the well-reasoned majority opinion. I write separately to note my disagreement with my dissenting colleague's view, which would effectively gut the statute, according with neither its plain language nor legislative intent.

My dissenting colleague would effectively read into § 922(g)(9) an exception for domestic violence convictions that are not, in his view, "serious" enough. But doing so would unjustifiably subvert the intent of Congress, as made clear in the plain language of the statute: "It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence," to engage in certain firearm-related activity. 18 U.S.C. § 922(g)(9). The statute defines "misdemeanor crime of domestic violence." *Id.* § 921(a)(33). And that definition provides specific exceptions. *Id.* § 921(a)(33)(B). While the definition narrows the scope of the statute to a particular group of domestic violence misdemeanants, none of the statutory exceptions pertains to how "serious" the underlying domestic violence offense was.

That should not be surprising. After all, it is self-evident on the face of the statute that Congress wished to single out domestic violence convictions, regardless of how "serious" those convictions are. The statute *already covers* those "who ha[ve] been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year"—that is, those who have been convicted of crimes generally considered more "serious." *Id.* § 922(g)(1). The *only* misdemeanants covered by the statute are those convicted of crimes of domestic violence.

13

That distinction represents Congress's policy judgment. And, as we have held, that was Congress's prerogative. *United States v. Staten*, 666 F.3d 154, 163–67 (4th Cir. 2011). Underlying Congress's decision to single out domestic violence misdemeanors are the "sobering" realities that "[d]omestic violence often escalates in severity over time," "the presence of a firearm increases the likelihood that it will escalate to homicide," and "many perpetrators of domestic violence are convicted only of misdemeanors." *United States v. Castleman*, 572 U.S. 157, 160 (2014).

My dissenting colleague brushes aside our precedent approving of the constitutionality of this measure with a puzzling reference to the Supreme Court's decision in *Castleman*. Dissenting Opinion at 31 ("Now that the Supreme Court has mandated a broader scope for § 922(g)(9), *Staten* cannot control the outcome of Harley's challenge."). But my colleague gets the matter precisely backwards. The Supreme Court's decision in *Castleman* only serves to highlight why § 922(g)(9) is constitutional, even as applied to those domestic violence misdemeanants whose misdemeanors some may deem not to be "serious."

As the Supreme Court explained, "'[d]omestic violence' is not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." *Castleman*, 572 U.S. at 165. But even otherwise innocuous acts, in the particular context of domestic violence, can "accumulat[e] . . . over time," thereby "subject[ing] one intimate partner to the other's control." *Id.* at 166. For that reason, the Court went on, "[i]f a seemingly minor act . . . draws the attention of authorities and leads to a successful prosecution for a misdemeanor offense"—which, all too often, is a big

14

"if"—"it does not offend common sense or the English language to characterize the resulting conviction as a 'misdemeanor crime of domestic violence.'" *Id.*

The Court also pointed to the text of the statute, noting that other statutory provisions "show that when Congress wished to define 'domestic violence' as a type of 'violence' *simpliciter*, it knew how to do so. That it did not do so here suggests, if anything, that it did not mean to." *Id.* at 166 n.6. Therefore, the Court noted, Congress has the option "to define 'domestic violence'—where it wants to—as requiring violent force." *Id.*

It is hard to see how all of this supports the dissent's view. The Supreme Court plainly interpreted the statute to cover *all* enumerated domestic violence misdemeanors—not just those for "serious" offenses—and concluded that this was Congress's intent. Moreover, it is hard to fathom why the Supreme Court would have given the statute a meaning in *Castleman* that it believed to be unconstitutional without engaging with the constitutional concerns raised, albeit in passing, by the defendant in that case.

*Castleman* also contradicts the dissent's implication, based on limited legislative history, that § 922(g)(9) was meant *only* to combat "serious" domestic violence. *See* Dissenting Opinion at 24. In fact, as *Castleman* noted, "to the extent that legislative history can aid in the interpretation of this statute," it does not support the contention that "Congress could not have intended for the provision to apply to acts involving minimal force." *Castleman*, 572 U.S. at 171; *see also id.* at 172 ("[N]othing about these Senators' isolated references to severe domestic violence suggests that they would not have wanted § 922(g)(9) to apply to a misdemeanor assault conviction like Castleman's."). Rather, as noted, Congress's interest was in preventing *any* member of a defined subset of domestic

15

violence misdemeanants from possessing firearms, based on the risks that subset of misdemeanants posed to others. The governmental interest is in preventing *future* harm, and its method of doing so is by disarming individuals who have demonstrated a potential to enact that future harm. The application to Harley is thus not "far outside [the law's] justification." Dissenting Opinion at 24 n.5. In other words, as we concluded in *Staten*— and conclude again today—Congress's policy judgment in enacting § 922(g)(9) survives intermediate scrutiny, even in the context of Harley's as-applied challenge, given the narrowness of the statutory provision.[*]

Further, adopting my dissenting colleague's view would create a strange anomaly in our case law. After all, this Court has already held that § 922(g)(1) may constitutionally be applied to even *nonviolent* felons. *United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012); *see also Hamilton v. Pallozzi*, 848 F.3d 614, 623 (4th Cir. 2017) (upholding Maryland laws "substantially similar" to § 922(g)(1) against an as-applied challenge by a felon convicted of credit card fraud, credit card theft, and credit card forgery). It would be a strange world indeed if we were to make exceptions to the firearm prohibition for some domestic violence misdemeanants—whose crime is specifically enumerated in the statute and by definition includes *some* level of violence—while rejecting challenges from those with plainly nonviolent felony convictions.

---

[*] *See Staten*, 666 F.3d at 167 ("We recognize that the net cast by § 922(g)(9) may be somewhat over-inclusive given that every domestic violence misdemeanant would not necessarily misuse a firearm against a spouse . . . if permitted to possess one. However, this observation merely suggests that the fit is not perfect. Intermediate scrutiny does not require a perfect fit; rather only a reasonable one.").

16

Finally, I note that the Supreme Court has (unanimously) indicated a concern with courts engaging in analyses to determine whether individuals may safely possess firearms after having lost their rights to do so. A federal statute, 18 U.S.C. 925(c), "permits the Attorney General to grant relief from a firearms disability if 'the applicant will not be likely to act in a manner dangerous to public safety and . . . the granting of the relief would not be contrary to the public interest.'" *Stimmel v. Sessions*, 879 F.3d 198, 211 (6th Cir. 2018) (alteration in original) (quoting 18 U.S.C. 925(c)). But "Congress has withheld funding for processing § 925(c) relief applications since 1992 after finding that reviewing applications was a 'very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision [wa]s made.'" *Id.* (alteration in original) (quoting S. Rep. No. 102-353, at 19 (1992)).

Section 925(c) also permits judicial review where the Attorney General denies relief. In *United States v. Bean*, 537 U.S. 71 (2002), the applicant argued that the Attorney General's failure to act on his application due to the lack of funding constituted a "denial," permitting judicial review.

The Supreme Court disagreed and concluded federal courts lack jurisdiction in the absence of an "actual decision" by the Attorney General. *Id.* at 76. Further, and relevant to this case, the Court emphasized that the Attorney General was to be "the primary decisionmaker" because the evaluation necessitated by § 925(c) was one for which courts were less competent than the executive branch:

> Whether an applicant is "likely to act in a manner dangerous to public safety" presupposes an inquiry into that applicant's background—a function best performed by the Executive, which, unlike courts, is institutionally equipped for conducting a

17

neutral, wide-ranging investigation. Similarly, the "public interest" standard calls for an inherently policy-based decision best left in the hands of an agency.

*Id.* at 77.

Here, Harley seeks to avoid the limitations of § 925(c) by pursuing an as-applied challenge directly in federal court, arguing that his specific circumstances mean that § 922(g)(9) is unconstitutional as applied to him. The dissent would permit him to do that. Respectfully, in my view, the statutory structure speaks for itself. Harley's relief, if any, lies in obtaining a pardon in Virginia or receiving relief from the Attorney General. 18 U.S.C. §§ 921(a)(33)(B)(ii), § 925(c). Those are the paths Congress has designated. And it is within its constitutional rights to do so.

RICHARDSON, Circuit Judge, dissenting:

The Second Amendment provides, "A well regulated militia, being necessary to the security of a Free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *Heller v. District of Columbia*, the Supreme Court turned to text, history, and tradition to conclude that the Amendment codified a preexisting "individual right to keep and bear arms" but instructed that this right, like most rights, "is not unlimited." 554 U.S. 570, 595, 626 (2008). In this appeal, we review one legislative effort at restricting who may keep and bear arms. Section 922(g)(9) permanently disarms anyone convicted of a misdemeanor crime of domestic violence. Harley, having been convicted nearly thirty years ago under Virginia law, falls under the plain language of the statute. We ask only if the Second Amendment permits his statutory disarmament.

We do not face this challenge on a clean slate. For we have held that this prohibition is subject to and generally valid under intermediate scrutiny. *United States v. Staten*, 666 F.3d 154 (4th Cir. 2011). Harley accepts this holding, agreeing that the prohibition is generally constitutional.[1] Harley argues only that the prohibition cannot constitutionally

---

[1] In *United States v. Chester*, we assumed that domestic-violence misdemeanants were covered by the Second Amendment in the face of historical ambiguity. 628 F.3d 673, 681 (4th Cir. 2010); *see also Staten*, 666 F.3d at 160. However, because those convicted of domestic violence misdemeanors were not "law-abiding" and thus outside the Second Amendment's core protections, we held that intermediate scrutiny applied to § 922(g)(9). *Chester*, 628 F.3d at 683. We have also used this notion of "law-abiding" individuals to preclude illegal aliens from the scope of the Second Amendment entirely. *United States v. Carpio-Leon*, 701 F.3d 974, 979, 981 (4th Cir. 2012). But we have never defined what it means to be "law-abiding." *See Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 689 (6th Cir. 2016). What we have made clear, however, is that "any person committing any crime [does not] automatically lose[] the protection of the Second Amendment": some

be applied to him because of his "individual circumstances." The district court categorically rejected this argument and the majority follows suit, accepting that no circumstances could ever create constitutional concerns. I disagree. Under existing Second Amendment precedent, this case should be sent back to the district court so it can consider the particular circumstances of Harley's conviction.[2]

Second Amendment jurisprudence leaves much to be desired.[3] Even so, it permits Harley to bring his challenge based on his circumstances. For a prohibition that is generally

---

"persons who commit some offenses might nonetheless remain in the protected class of 'law-abiding, responsible' person[s]." *Carpio-Leon*, 701 F.3d at 981. Otherwise "the Government could make an end-run around the Second Amendment" through minor infractions, such as speeding. *Binderup v. Att'y Gen.*, 836 F.3d 336, 350–51 (3d Cir. 2016) (making a similar argument in the context of defining felonies broadly to escape Second Amendment scrutiny). And if someone's specific conviction did not remove them from the "law-abiding" core of the Second Amendment, then strict scrutiny would apply. *See Chester*, 628 F.3d at 683. But Harley does not claim that he remains a law-abiding person protected by the core of the Second Amendment after his conviction.

[2] In no respect do I question the "sobering" realities of domestic violence or the deadliness that guns bring to this national crisis. *United States v. Castleman*, 572 U.S. 157, 159–60 (2014).

[3] To be fair, some of the confusion stems from the Supreme Court's puzzling guidance in *Heller*. On the one hand, the Court directed we look to text, history, and tradition to understand the Second Amendment. Yet the Court also instructed that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626–27; *see id.* at 627 n.26 (describing these as examples of "presumptively lawful regulatory measures"). Even as dictum, this language casts a long shadow on lower courts. It is not readily apparent how felon-dispossession laws or bans on firearm possession by the mentally ill fit within the analytical framework *Heller* directs we apply. So rather than develop a cogent theory of the contours of the Second Amendment, we often focus on whether a given regulation falls within the scope of *Heller*'s list. *Cf. United States v. McCane*, 573 F.3d 1037, 1047–50 (10th Cir. 2009) (Tymkovich, J., concurring).

constitutional may well be unconstitutional when applied to a particular person whose circumstances take him outside the ban's justifications. *See Hamilton v. Pallozzi*, 848 F.3d 614, 626 n.11 (4th Cir. 2017); *United States v. Smoot*, 690 F.3d 215, 221 (4th Cir. 2012). An as-applied challenge is "based on a developed factual record and the application of a statute to a *specific person.*" *Educ. Media Co. at Va. Tech v. Insley*, 731 F.3d 291, 298 n.5 (4th Cir. 2013) (emphasis added) (quoting *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc)). And a law that may be constitutional when applied to one person may be unconstitutional as applied to another. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006).

We have considered a plaintiff's particular circumstances in an as-applied challenge before. *See United States v. Hosford*, 843 F.3d 161, 169–70 (4th Cir. 2016). In *Hosford*, we engaged in a fact-specific as-applied inquiry after finding a licensing scheme for firearms dealers facially valid. Looking to Hosford's particular circumstances, we found that the law was constitutional as applied: "the government's interests in the law generally also justify applying the law to Hosford" since Hosford's conduct in selling firearms without background checks was exactly the problem Congress was trying to solve. *Id.* We thus asked whether an otherwise valid law could constitutionally apply to Hosford's own circumstances based on the government's interest. *See Insley*, 731 F.3d at 298 ("[T]he state must justify the challenged regulation with regard to its impact on the plaintiffs.").

Similarly, the Sixth Circuit remanded an as-applied challenge to the law disarming the mentally ill because the government had not justified the restriction based on plaintiff's specific circumstances. *Tyler*, 837 F.3d at 686, 699. The Sixth Circuit agreed that the fit

21

did not need to be perfect, but "the amount of overreach must be reasonable, and it is the government's burden, not [the challenger's], to prove that [the law's] scope is in proportion to the interest served." *Id*. at 698 (internal quotation marks omitted).

This approach also applies to a First Amendment as-applied challenge.[4] For example, in *Insley* we declared that an otherwise valid restriction on alcohol advertisements in school newspapers violated the First Amendment as applied to a couple of college papers. 731 F.3d at 294, 296, 302. As those particular papers had a majority of readers over the age of 21, we found that the restrictions were too broad and failed to further a legitimate government interest under intermediate scrutiny. *Id.* at 301.

We also should review a plaintiff's particular circumstances where a disarmament law hinges on state-law convictions. We have permitted such as-applied challenges to the federal-felon-disarmament law (§ 922(g)(1)) because of its broad scope despite the law being "presumptively valid" and Congress creating no exceptions to its sweep. *See Smoot*, 690 F.3d at 221; *United States v. Moore*, 666 F.3d 313, 319–20 (4th Cir. 2012). And although we have never had a successful as-applied challenge to the felon-disarmament law, we have acknowledged that the success of an as-applied challenge is "theoretically" possible where a challenger's "factual circumstances remove his challenge from the realm of ordinary challenges." *Moore*, 666 F.3d at 319–20; *see United States v. Pruess*, 703 F.3d 242, 245–47 (4th Cir. 2012) (rejecting challenge to the felon-disarmament law as applied

---

[4] We often look to First Amendment law as a guidepost for Second Amendment claims. *Kolbe v. Hogan*, 849 F.3d 114, 133 (4th Cir. 2017) (en banc); *Chester*, 628 F.3d at 682.

to a plaintiff with a non-violent conviction after finding that more than twenty convictions placed him outside the Second Amendment's core).

The Third Circuit has largely adopted this approach for as-applied challenges to the felon-disarmament law (§ 922(g)(1)). That court permitted plaintiffs to challenge the constitutionality of applying the law based on their specific state convictions. *Binderup*, 836 F.3d at 350–53. After reviewing plaintiffs' convictions, the court found that they were not serious enough to remove plaintiffs from the Second Amendment's protection in part because the state convictions were labeled as misdemeanors and led to minor punishments, showing that the convictions were not "serious." *Id.* The court then found that the government failed to meet its burden under intermediate scrutiny because it offered no evidence "explaining why banning people like them (*i.e.*, people who decades ago committed similar misdemeanors) from possessing firearms promotes public safety" while plaintiffs provided evidence of their low likelihood of future danger or recidivism. *Id.* at 353–56.

When we recently considered the felon-disarmament law (§ 922(g)(1)), we favorably cited the analysis of *Binderup* and noted that a plaintiff's particular facts may be relevant for other disarmament laws. *Hamilton*, 848 F.3d at 625–26, 626 n.12. We rejected an as-applied challenge for anyone convicted of a crime designated by the state as a felony. But we did not reject considering particular facts in an as-applied challenge. In fact, we recognized the felon-disarmament law might encompass a crime that state law does not consider a felony but that falls within the federal definition ("a crime punishable by imprisonment for a term exceeding one year," § 922(g)(1)). And in that instance, a court

23

may conduct individualized scrutiny based on the particular circumstances of the offender. *See id*. at 626 n.11. So where the state treats a conviction as a misdemeanor, like in *Binderup*, we can look at specific facts underlying the conviction at issue, even for intermediate scrutiny. And in doing so, we can see whether the government's legitimate interests are furthered by applying the law to the particular facts underlying plaintiff's state conviction.

To frame Harley's challenge to the law disarming domestic-violence misdemeanants (§ 922(g)(9)), we must first explore the law's justifications and scope. In 1996, Congress justified enacting § 922(g)(9) because existing laws disarming felons "were not keeping firearms out of the hands of domestic abusers, because 'many people who engage in *serious* spousal or child abuse ultimately are not charged with or convicted of felonies.'" *United States v. Hayes*, 555 U.S. 415, 426 (2009) (emphasis added) (quoting 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg)); *United States v. Chovan*, 735 F.3d 1127, 1140 (9th Cir. 2013) (noting that Congress was targeting those who "demonstrated violence"). Thus, Congress sought to "close this dangerous loophole" and prevent serious domestic-violence offenders from possessing firearms. *Hayes*, 555 U.S. at 426 (quoting 142 Cong. Rec. 22986).[5] To do so, § 922(g)(9) bans the possession of a gun

---

[5] We do not cite this legislative history in order to interpret the statute and suggest that non-serious domestic violence offenses are not covered by the text. Rather, it serves to highlight the Government's interest and the law's fit. *Staten*, 666 F.3d at 161 (using legislative history to show the government's interest in reducing domestic gun violence). When a law applies far outside its justification, constitutional concerns may be raised in as-applied constitutional challenges. We do not face a question about what Congress meant, for we all agree the text of the statute covers Harley. We ask instead whether that application is constitutional.

by an individual who has "been convicted in any court of a misdemeanor crime of domestic violence." And a "misdemeanor crime of domestic violence" includes (1) any state-law misdemeanor that (2) "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" and that is (3) committed by a family member of the victim. 18 U.S.C. § 921(a)(33)(A).

In *Staten*, we rejected one Second Amendment challenge to § 922(g)(9). 666 F.3d at 167. Based on the law's justification and supposed narrow scope, we rejected the claim that § 922(g)(9) could not be constitutionally applied to Staten.[6] We found that the government had established a reasonable fit between § 922(g)(9)'s "narrow" prohibitory sweep and the government's interest in "reducing domestic gun violence and keeping firearms out of the hands of: (1) persons who have been convicted of a crime in which the person used or attempted to use force *capable of causing physical pain or injury*" against a family member "and (2) persons who have threatened the use of a deadly weapon against" a family member. 666 F.3d at 167 (emphasis added). To establish this reasonable fit, the government showed that: Domestic violence was a serious issue, recidivism rates were high for domestic violence misdemeanants, firearms are too often used in connection with

---

[6] The record reveals that Staten had at least three domestic-violence convictions, including one for repeatedly beating his second wife with a closed fist. *See* Joint Appendix 304–06, *United States v. Staten*, 666 F.3d 673 (No. 10-5318). Unsurprisingly, Staten never argued that the nature of those convictions (or his multiple other arrests for domestic-violence offenses and for violating protective orders, *id.*) mattered to his challenge. *See* Appellant Br. 6–7, 26–32, *United States v. Staten*, 666 F.3d 673 (No. 10-5318), Dkt. No. 17. And so we did not address the specifics of his prior conduct in rejecting his claims.

25

domestic violence, and firearms increase and are often connected to injuries and homicides related to domestic violence. *Id.*

On first glance, the scope of § 922(g)(9)'s ban appears to be narrowly focused. But as a result of recent Supreme Court decisions, it may now sweep beyond its design to encompass conduct outside its original justifications in two meaningful ways. First, the "use of physical force" that is a necessary element of a "misdemeanor crime of domestic violence*"* includes any "offensive touching," not just violent force. *United States v. Castleman*, 572 U.S. 157, 162–63 (2014). *Compare id.*, *with Johnson v. United States*, 559 U.S. 133, 140, 143 (2010) (holding that the "use of physical force" in § 924(e)(2)(B)(i)'s definition of a "violent felony" requires "violent force"). Second, that offensive touching need not be intentional, since the Supreme Court has held that § 922(g)(9) encompasses a state crime requiring only *reckless* conduct. *Voisine v. United States*, 136 S. Ct. 2272, 2280 (2016).

This expanded scope is illustrated by the law Harley was convicted under, Virginia Code § 18.2-57.2. A conviction under that Virginia law does not require the use of violent force but may be satisfied with an "offensive touching." *United States v. White*, 606 F.3d 144, 147–48 (4th Cir. 2010), *abrogated on other grounds by Castleman*, 527 U.S. at 167–68. And it also criminalizes both the intentional use of force and the reckless use of force. *See Clark v. Commonwealth*, 691 S.E.2d 786, 788–89 (Va. 2010) (stating that a common-law definition of assault and battery applies to § 18.2-57.2); *see also Trent v. Commonwealth*, No. 1844–03–02, 2004 WL 1243037, at *1 (Va. Ct. App. June 8, 2004) (stating that Virginia law imputes an intent to do bodily harm to the defendant if he acts

with "reckless and wanton disregard of the lives and safety of others"); *Morrison v. Commonwealth*, No. 2645-00-2, 2002 WL 663641, at *2 (Va. Ct. App. Apr. 23, 2002) (finding that assault and battery includes acting "in a manner of reckless and wanton disregard"). The breadth of Virginia Code § 18.2-57.2 does not remove Harley's conviction from the reach of § 922(g)(9)'s use-of-physical-force requirement now that the Supreme Court has made clear that an "offensive touching" qualifies as "physical force" and the non-intentional reckless use of that force suffices. *Castleman*, 572 U.S. at 162–63; *Voisine*, 136 S. Ct. at 2280.

But these same broad interpretations of § 922(g)(9) create the potential to ensnare individuals who fall outside the ban's justifications and whose conduct may not permanently deprive them of their individual right to possess a gun for self-defense. Consider a wife spitting on her spouse or knocking him off an ATV through reckless driving. *Cf. Castleman*, 572 U.S. at 165 n.5 (citing sources for the proposition that physical forms of domestic violence "may include spitting" or "relatively minor assaults such as painful pinching or squeezing"); *White*, 606 F.3d at 148 (noting that Virginia has long held that battery may be accomplished by the slightest touch, including spitting (citing *Hardy v. Commonwealth*, 58 Va. (17 Gratt.) 592, 601 (1867))); *Davis v. Commonwealth*, 143 S.E. 641, 643 (1928) (permitting battery conviction based on reckless driving). Those examples, though it is perhaps fanciful to think that such conduct would be prosecuted, would fall outside the type of serious abuse likely to lead to recidivism and firearm violence that justified § 922(g)(9)'s lifetime firearm dispossession.

27

Harley's own case—at least as alleged—is less clear but also highlights the statute's broad scope. Nearly thirty years ago, Harley paid a $75 fine after pleading guilty to a misdemeanor domestic assault charge under Virginia Code § 18.2-57.2. As Harley alleges,

> [t]he charge was based on a single, one off incident[:] Mr. Harley and his wife had an argument while she was inside a SUV and he was standing outside the vehicle. He stood on the running board and reached into the vehicle to turn it off, and she pushed him. He reached inside the vehicle to hold on and, in so doing, he grabbed her arm.

J.A. 9. During the incident, there "was no punching, slapping, hitting, or violence." *Id.* While Harley and his wife later separated and divorced, they "remained on friendly and amicable terms working collaboratively to successfully raise their children." *Id.* Harley provided an affidavit from his ex-wife supporting his version of the incident underlying his conviction. J.A. 23–24.

The government, citing a police report, suggests that Harley's actions were more serious and perhaps not a lone incident. *See* Appellee Br. 3; J.A. 73. Maybe so. But the district court ignored the conduct underlying the conviction, believing it was not germane, and granted summary judgment for the government. In doing so, the court disregarded Harley's particular conviction. But the conduct underlying the conviction may create an avenue for a successful as-applied challenge. Because this conduct was in dispute and because we cannot resolve "genuine disputes of fact in favor of the party seeking summary judgment," *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)), the proper course for the district court was to deny the government's motion at this stage, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It may of course be true that Harley shoved and struck his ex-wife as the

28

government alleges. But it may also be true that his conviction stemmed from a reckless offensive touching as Harley contends. And if that is the case, then the district court should consider in the first instance whether those actions are constitutionally sufficient to deprive Harley of the right to keep and bear arms under the Second Amendment.[7]

Yet the majority categorically determines that someone like Harley may not challenge § 922(g)(9)'s prohibition based on individual circumstances taking them outside the "realm of ordinary challenges." Majority Op. 8-10 (quoting *Smoot*, 690 F.3d at 221). Such a challenge is permissible, the majority notes, for felon-disarmament laws like § 922(g)(1). But the majority excludes § 922(g)(9) from such a challenge for three reasons:

[7] As we recognized in *Hamilton*, how a sovereign state labels and treats a crime bears on whether one convicted of it may be constitutionally deprived of all Second Amendment rights. 848 F.3d at 626 & n.11. In *Hamilton*, we rejected the claim that § 922(g)(1) was unconstitutional as applied to an individual convicted of credit-card fraud, theft, and forgery—state-law felonies. *Id.* at 627–28. There is ongoing debate on whether felons have historically been disarmed because of the danger they pose to the public or because of their lack of virtue. *See Binderup*, 836 F.3d at 348–49 (stating that the right to bear arms is tied to virtuous citizenry); *Folajtar v. Att'y Gen. U.S.*, 980 F.3d 897, 924 (3d Cir. 2020) (Bibas, J., dissenting) (stating that the right to bear arms is tied to dangerousness); *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting) (same). But either way, in analyzing the constitutionality of § 922(g)(1), we have afforded significant weight to the state's belief of how dangerous or unvirtuous those convicted of particular crimes are. *Hamilton*, 848 F.3d at 626. In *Hamilton*, the state's designation was so important to our reasoning that we held that an individual convicted of a law a state labels a felony cannot succeed in an as-applied challenge to § 922(g)(1). *Id.* at 625–26. Adhering to *Hamilton*, we should look to the state sovereigns in the context of § 922(g)(9). Unlike § 922(g)(1), we know the justification for disarming domestic-violence misdemeanants: to prevent *serious* domestic violence offenders from possessing guns and harming family members. *See Hayes*, 555 U.S. at 426. And along with the alleged circumstances of the offense, Harley alleges that he was punished with only a $75 fine (the maximum allowable punishment was imprisonment for less than a year and a fine of $2,500, *see* Va. Code Ann. §§ 18.2-57.2, -11) and was not prohibited by the Commonwealth from possessing a firearm.

29

(1) *Staten* forecloses an individualized as-applied challenge to § 922(g)(9); (2) § 922(g)(9) has no enumerated exceptions; and (3) § 922(g)(9) is supposedly a narrow, uniform law. But none of these reasons justify categorically foreclosing Harley's as-applied challenge.[8]

The majority's reliance on *Staten* to categorically reject any consideration of individualized circumstances in an as-applied challenge to a conviction under § 922(g)(9) impermissibly overlooks the rationale of *Staten*. *See* Majority Op. 8. In *Staten*, we rejected plaintiff's as-applied challenge to § 922(g)(9). Applying intermediate scrutiny, we upheld the law as a reasonable fit between reducing gun violence and the disarmament. *Staten*, 666 F.3d at 167. But we expressly relied on the supposed narrow scope of § 922(g)(9) in doing so. At that time, we had held that § 922(g)(9) required "the use or attempted use of force capable of causing physical pain or injury to another or the threatened use of a deadly weapon [as] an element of the" disqualifying domestic-violence misdemeanor. *Id.* at 162. The government had shown that there was a reasonable fit between reducing domestic gun violence and keeping guns out of the hands of individuals convicted of *those* domestic-violence misdemeanors. *Id.* at 167. As a result, any overbreadth of § 922(g)(9), as then defined, "merely suggests that the fit is not perfect." *Id.*

But in finding § 922(g)(9) was narrow and met the reasonable-fit standard, we relied on *White*'s holding that "offensive touching" was excluded from § 922(g)(9)'s scope. *See*

---

[8] Nor does reason indulge such a conclusion when one considers that the majority's holding leaves us applying a more exacting constitutional analysis to § 922(g)(1), a presumptively lawful regulation under *Heller*, than to § 922(g)(9), a law which carries no such presumption. *See Staten*, 666 F.3d at 160 (stating § 922(g)(9) is not presumptively lawful under *Heller*).

30

*Staten*, 666 F.3d at 163 ("§ 922(g)(9) does not apply to persons convicted of a misdemeanor for using or attempting to use force against a spouse which is incapable of causing physical pain or injury to another, such as an offensive touching in a common law battery." (citing *White*, 606 F.3d at 153)). But *Castleman* overruled *White* and invalidated *Staten*'s premise that § 922(g)(9) has a narrow scope. *See United States v. Carthorne*, 878 F.3d 458, 468 (4th Cir. 2017) (recognizing the abrogation of *White*). Now that the Supreme Court has mandated a broader scope for § 922(g)(9), *Staten* cannot control the outcome of Harley's challenge.

Perhaps *Staten* would control if a hypothetical domestic-violence misdemeanant was convicted of a crime requiring the intentional use of "force capable of causing physical pain or injury." *Staten*, 666 F.3d at 167. But, as a result of *Castleman* and *Voisine*, it has little applicability to convictions that stem from a reckless offensive touching. It may turn out that the government can show that Harley intentionally used the type of force that *Staten* found that Congress could regulate. But Harley's alleged conduct was merely reckless offensive touching, and that was excluded from *Staten*'s analysis of § 922(g)(9). And that is reason enough to consider Harley's as-applied challenge.

Even so, the majority takes *Staten* to mean that an individualized consideration is never warranted in an as-applied challenge to § 922(g)(9).[9] This overlooks not only our

---

[9] The majority also states that even in a context where an individualized consideration is warranted, such consideration is only a "theoretical possibility." Majority Op. 10. The majority mistakenly relies on *Moore* for this assertion. *Moore* says that theoretically, "a case might exist in which an as-applied Second Amendment challenge to § 922(g)(1) could *succeed*." 666 F.3d at 320 (emphasis added). This addresses the rare success of challenges to § 922(g)(1), not how often we evaluate individual characteristics.

31

now-rejected interpretation of § 922(g)(9) but also the substance of Staten's challenge. Given Staten's extensive record of criminal conduct, he never argued that his factual circumstances or the nature of his convictions made the ban unconstitutional as applied to him in particular. *See supra*, n.6. Instead, he argued that the law was unconstitutional as applied to anyone convicted of misdemeanor crimes of domestic violence. Appellant Br. 6–7, 26–32, *United States v. Staten*, 666 F.3d 673 (No. 10-5318), Dkt. No. 17. Harley does not challenge § 922(g)(9) without regard to his unique circumstances. Instead, he accepts that § 922(g)(9) is generally constitutional, arguing only that it is unconstitutional when applied to him, an individual convicted thirty years ago of a misdemeanor crime of domestic violence allegedly based on a reckless offensive touching. *Cf. Hamilton*, 848 F.3d at 626 n.11. This fundamentally different challenge Harley raises cannot be controlled by *Staten*'s rejection of that plaintiff's claim. *See Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 282, 289 (1921) ("A statute may be invalid as applied to one state of facts and yet valid as applied to another.").

Nor is § 922(g)(9)'s lack of enumerated exceptions a reason to preclude an individualized as-applied analysis. The majority believes that where a "statute imposes a flat prohibition, with no reference to individual circumstances occurring after the disqualifying crime," no constitutional exceptions can be created. Majority Op. 8. Nevertheless, the majority simultaneously notes that § 922(g)(1)—a statute that "imposes a flat prohibition, with no reference to individual circumstances occurring after the disqualifying crime"—is so broad that constitutional exceptions can be created. *Id.* at 9. Assuredly, the lack of enumerated exceptions in a statute does not preclude the success of

32

a constitutional challenge based on one's particular circumstances. Otherwise, as-applied challenges would disappear, and this cannot be so. *See United States v. Treasury Emps.*, 513 U.S. 454, 477–78 (1995) (stating a strong preference for as-applied challenges); *see also* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1328 (2000) ("As-applied challenges are the basic building blocks of constitutional adjudication."). In that world, individuals either fall within exceptions enumerated in the statute or they do not, in which case there is no recourse for potentially unconstitutional prohibitions.[10]

The majority's argument then retreats to its last defense: breadth. First, the breadth of a statute is not dispositive in deciding whether individualized scrutiny is required. The relevant question in an as-applied analysis is whether the law applies unconstitutionally in only some factual circumstances. *See Insley*, 731 F.3d at 298 & n.5; *Herring*, 570 F.3d at 172. Of course, the broader a statute, the more likely it is that these challenges succeed, but that does not mean that a narrower law is immune from attack. All that is needed for a successful as-applied challenge is "one state of facts" where the statute applies

---

[10] Judge Wynn asserts that an individual disarmed by statute may not turn to the Constitution because the executive is empowered to grant discretionary relief under 18 U.S.C. § 925(c), as discussed in *United States v. Bean*, 537 U.S. 71 (2002). First, the Concurrence itself notes that this discretionary relief is unavailable because of a lack of funding. Second, *Bean* dealt with administrative-law discretion and addressed no constitutional issues, much less blessed all federal-disarmament statutes as constitutional. 537 U.S. at 74-79. But even more to the point, I struggle to see how this discretionary power for an executive official to grant relief (or a state's pardon power) eliminates the ability to bring a Second Amendment constitutional challenge.

unconstitutionally. *Ayotte*, 546 U.S. at 329. Congress's specificity, or lack thereof, in crafting laws cannot sidestep our judicial review. *See id.*[11]

But even if the breadth of a statute could preclude any individualized scrutiny, we now know that § 922(g)(9) covers sufficiently divergent conduct to warrant this individualized consideration. The majority continues to insist that § 922(g)(9) is a narrow and focused statute. *See* Majority Op. 8–9; *cf. Staten*, 666 F.3d at 162–63 (the "term 'misdemeanor crime of domestic violence,' as construed in *White*, 606 F.3d at 155, keeps § 922(g)(9)'s prohibitory sweep narrow"). But as already discussed, the Supreme Court's cases since *Staten* broadened the reach of § 922(g)(9) so that it covers an offender who only recklessly caused an offensive touching.

Harley's alleged individualized circumstances plausibly place him outside the realm of ordinary challengers to § 922(g)(9). And *Staten* does not preclude his challenge given

---

[11] The government's reliance on *United States v. Carter*, 669 F.3d 411 (4th Cir. 2012), is no more availing. Carter argued that § 922(g)(3)'s bar on possessing a firearm while being an unlawful drug user or addict could not constitutionally be applied to him as a user of only marijuana. *Carter*, 669 F.3d at 417, 420. Noting that the government had failed to put forward any academic research or empirical studies to carry its burden of proving a reasonable fit between its interest in protecting the community from gun violence and § 922(g)(3), this Court vacated the district court's judgment and remanded. *Id.* at 413, 418. But we did so only after addressing Carter's particularized argument that a user of marijuana could not be disarmed because any risk associated with mixing drugs and guns is limited to dealers of drugs. *Id.* at 420. We found that many risks that apply to dealers of marijuana would apply to users as well: Risks, such as the "loss of self control" and the "need to deal with sellers of drugs and to enter black markets doing so[,] . . . along with heightened financial costs, might be shown to drive many users [of marijuana] to a life of crime." *Id.* Far from holding that no individualized scrutiny was permitted under § 922(g)(3), we remanded for the government to produce evidence showing that disarming users of marijuana, a subset of those covered by § 922(g)(3), substantially furthered its interest in protecting the community from gun violence. *Id.* at 417–21.

the intervening Supreme Court directives and the different challenge presented there. Nor does anything inherent in § 922(g)(9) preclude us from considering Harley's individualized circumstances in an as-applied challenge. So the district court should have considered whether Harley's circumstances permit permanently depriving him of the right to keep and bear arms under the Second Amendment.

*          *          *

An individual falling within a statutory prohibition that can be constitutionally applied to some may still challenge whether the prohibition can be constitutionally applied to him. That fundamental principle should apply equally to the individual right enumerated in the Second Amendment. Harley plausibly claims that § 922(g)(9) cannot be constitutionally applied to him as an individual with a nearly thirty-year-old misdemeanor conviction for recklessly causing an offensive touching. We should not categorically reject that claim. Accordingly, I respectfully dissent.